**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FRANK ANGIULO, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | JURY DEMAND |
| v | ) | |
| | ) | December 20, 2011 |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| TIMOTHY GEITHNER, SECRETARY OF | ) | |
| THE TREASURY; DEPARTMENT OF | ) | |
| TREASURY; and INTERNAL REVENUE | ) | |
| SERVICE; | ) | |
| | ) | |
| Defendant | ) | |

**COMPLAINT**

NOW COMES the Plaintiff, Frank Angiulo, by his attorney, Nicola S. Tancredi and for his complaint against Defendant United States of America;

Defendant Timothy Geithner, Secretary of Treasury; Defendant Department of Treasury and Defendant Internal Revenue Service (hereinafter Defendants) alleges as follows:

**NATURE OF THE CASE**

1. This is an action pursuant to the Rehabilitation Act, 29 U.S.C. 791 <u>et seq</u>., as amended (hereinafter referred to as "Rehabilitation Act") , to redress and enjoin the failure to comply with the obligations of the act, including but not limited to failures to properly investigate, evaluate, consider and accommodate known physical, mental and emotional disabilities, prohibited disparate treatment, creation of a hostile work environment harassment all based upon bias against persons with physical, mental and emotional  disabilities (including but not limited to major depression, cardiac

conditions, diabetes, morbid obesity and various physical conditions), and retaliation (prior EEO activity) committed by Defendant United States of America; Defendant Timothy Geithner, Secretary of Treasury; Defendant Department of Treasury and Defendant Internal Revenue Service during the time frame of, on and around January 7, 2009 to July, 2009.

2. This action also seeks remediation for Defendants' violations of their obligations under the Family Medical Leave Act, 29 U.S.C. sec. 2601, arising from its repeated failures to properly advise, instruct and otherwise provide Plaintiff his rights and options, which Congress intended and mandated in the Family Medical Leave Act. These included Plaintiff's rights to and options of unpaid leave and intermittent leave when medically appropriate.

3. On information and belief, Defendants' actions were motivated by a bias against persons with disabilities as set forth herein and targeted towards forcing Plaintiff to become constructively discharged and involuntarily retire.

4. Defendants' actions to force Plaintiff to involuntarily retire continued beyond the period of illegal activity from approximately January 2009 to July 2009, specifically addressed in this suit.

5. Cumulatively – Defendants actions – including those that occurred from approximately January 2009 to June 2009 and are specifically addressed in this suit – did succeed in creating a hostile work environment that no reasonable person would endure, resulting in Plaintiff's constructive discharge and involuntarily retirement in or around December 2009, effective January, 2010.

6. Defendants illegal and prohibited actions set forth herein were primarily executed through the individual actions, conspiracy and cooperative actions of Plaintiff's first line supervisor Sonja Ra'Vonn Hall and his second line supervisor Janice Gore.

7. On information and belief other such employees without disabilities were not comparably treated.

## **THE PARTIES**

8. Plaintiff, FRANK ANGIULO, is a citizen and resident of State of Illinois residing in the town of Westchester in the County of Cook, Illinois.  Until about December, 2009 he was employed as a revenue agent in the Internal Revenue Service, Department of Treasury assigned to one of three teams in the Employee Pension Plan Examination Section, Chicago, Illinois.  He is a qualified plaintiff, covered under both the Rehabilitation Act  and the Family Medical Leave Act. Mr. Angiulo is a member of the National Treasury Employees Union. Mr. Angiulo is a honorably discharged Navy veteran who voluntarily enlisted during the Vietnam era.  Working with the Department of Energy and Department of Treasury, he earned a distinguished and materially unblemished employment record extending over twenty-five years, until coming under the supervision of the discriminatory officials named herein in and about July, 2007.  While working with the Department of Energy, Plaintiff held its equivalent of a top secret clearance. His performance record prior to coming under the supervision of Ms. Sonja Ra'Vonn Hall in approximately July 2007 was materially unblemished.

9. Defendant United States of America is the government of the United States of America. Its officials select the executives and personnel of the Department of

10. Defendant Department of Treasury is a component of the US government with activities and facilities in the County of Cook, Illinois.

11. Defendant Timothy Geithner, is the Secretary of the Treasury and senior executive in the Department of Treasury of which the Internal Revenue Service is a component. Secretary Geithner's organization maintains and operates offices within the County of Cook, Illinois.

12. Defendant Internal Revenue Service is a component of the U.S. Department of the Treasury, with offices in the County of Cook, Illinois.

## JURISDICTION AND VENUE

13. This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343(a)(3) and 1343(a)(4).

14. Venue is proper in this Court pursuant to 28 U.S.C. §1391(e). Plaintiff has fulfilled all administrative prerequisites for the bringing of this lawsuit. *See* Agency final decision attached as Ex. 1 and incorporated by reference.

15. Plaintiff initially filed his formal complaint on April 8, 2009.

16. The Department of Treasury reached its final agency decision in regard to Plaintiff's second amended complaint on September 16, 2011.

17. Plaintiff's counsel received delivery of its final agency decision at 10:19 am on September 22, 2011 as shown by the attached United States Postal Confirmation (Attached as Ex. 2 and incorporated by reference).

18. Plaintiff properly exercised his right to file a civil action in the proper United States
District Court within 90 days after receiving the agency's final decision on September
22, 2011.

## FACTS COMMON TO ALL COUNTS

19.     At all relevant times addressed in this complaint, Plaintiff was able to perform the
essential functions of his job as a revenue agent with or without accommodation; as
demonstrated  by over twenty years of highly commended performance; and,
unquestionably, would have performed at an even enhanced level had he been
provided reasonably accommodation for his physical and mental disabilities as
intended and mandated by Congress in passing the Rehabilitation Act.

## PLAINTIFF'S BACKGROUND AND DISABLED STATUS

20. Plaintiff worked for the Internal Revenue Service, Department of Treasury, as a
revenue service agent, in the Chicago District from October 1983 to December 2009.

21. In October 1983, Plaintiff began to work for the Internal Revenue Service,
Department of Treasury, as a revenue service agent, in the Chicago District.

22. From October 1985 and continuing through all relevant time periods herein, Plaintiff
worked in the Employee Pension Plans Examinations Group, which consisted of three
teams.

23. During all relevant times herein and for at least five years preceding to include a time
period no later than January 1, 2004 to present, Plaintiff has suffered and been
inflicted and continues to suffer and be inflicted with a number of physical disabilities
including cardiac conditions and ailments – manifesting in repeated congestive heart
failures requiring hospitalization, diabetes, asthma,  hypertension, high blood

24. From approximately July of 2007 until his involuntary retirement in and around December, 2009; Plaintiff was assigned to the examination team under the first line supervision of Sonja Ra'Vonn Hall, second line supervision of Janice Gore and Senior Executive supervision of Monica Templemann.

25. Prior to being assigned under Ms. Sonja Ra'Vonn Hall's supervision in or around July, 2007; Plaintiff worked for a period of years under Internal Revenue Service Supervisor Richard Bedome; who had and has a high and positive opinion of Plaintiff's work performance and would have readily accepted Plaintiff back as an employee under his supervision. Mr. Bedome testified that Frank operated in an exemplary manner for years, had a solid reputation as a competent revenue agent and had competently served in the quality oversight unit, which inspected the work of other agents in the Employee Pension Review section.

26. In a performance appraisal signed by Sonya Hall on December 12, 2007, Frank Angiulo met or exceeded all of his performance aspects ratings.

## DEFENDANTS FLAGRANTLY VIOLATE REHABILITATION ACT

27. No later than April 10, 2008, Plaintiff notified his first and second line supervisors Sonja Ra'Vonn Hall and Janice Gore, respectively, of his physical and mental disabilities and requested accommodation including a reduction of stress in his work environment and possible transfer to one of the two other teams in the Examinations Group and away from the supervision of Sonja Ra'Vonn Hall.

28. Plaintiff's former supervisor Richard Bedome testified in a deposition during the administrative proceedings that revenue agents such as Plaintiff are routinely transferred among the three teams without adverse impact upon operations.

29. At the meeting on April 10, 2008, Plaintiff presented in support of his request for accommodation a letter from his psychiatrist, Dr. Bhatt, dated April 1, 2008. A copy of this letter is attached as Ex. 3 and incorporated by reference.

30. In this letter, Dr. Bhatt informed Plaintiff's first and second line supervisor that he was treating Plaintiff for anxiety, stress disorders and major depression and requested assistance in treating Plaintiff's condition by way of change in Plaintiff's work environment to a lower stress level, including a possible change in supervisors.

31. Plaintiff's first and second line supervisors Hall and Gore read Dr. Bhatt's letter, which requested a reduction of stress in the work environment to assist in mitigating Plaintiff's clinical conditions of anxiety and stress disorders and major depression.

32. After reading Dr. Bhatt's letter, Plaintiff's second line supervisor Gore immediately told Plaintiff "NO," and returned the letter to Plaintiff, without either Hall or Gore taken any further action with respect to the letter.

33. No later than this time on April 10, 2008, Defendants received formal, direct notice and information relating to the nature and extent of Plaintiff's serious physical and mental impairments; and further that his treating psychiatrist believed that work related stress was contributing to or exacerbating Plaintiffs disabilities and was requesting assistance in providing treatment to Plaintiff by requesting reasonable cooperation and accommodation from his employers and supervisors.

34. On information and belief, no later than time Defendants began acting on their previous decision to get rid of Frank Angiulo, a union member, long-tenured IRS employee with a previously materially unblemished employment record.

35. On information and belief other such employees without disabilities were not comparably treated.

36. On information and belief, including the testimony of both Hall and Gore during their depositions during the administrative proceedings related to this suit; following the April 10, 2008 meeting, neither Hall nor Gore mentioned the letter to any other section with the government; any other manager, human relations person, disabilities counselor or medical review authority; nor did either of them request medical review of or action on the information in the letter. Neither asked Plaintiff for additional information related to his disclosed disabilities.

37. On information and belief, other employees similarly situated without disabilities as Plaintiff had were allowed reduced stress in the workplace and were allowed to transfer among the three examination teams under Plaintiff's second line supervisor Janice Gore.

## PLAINTIFF ADVISED TO SUBMIT A FORMAL REQUEST

38. Following Defendants' prolonged and continual refusal to respond to prior notifications of his physical, mental and emotional disabilities and requests for accommodation as set forth herein; Plaintiff was finally advised to and did submit a formal reasonable accommodation request on or about May 14, 2009, a copy of which is attached as Ex. 4 and incorporated by reference. On this form he listed the following disabilities: heart Failure, hypertensions, major

39. After Plaintiff submitted a formal written application for reasonable accommodation and indicated that he was being treated for psychiatric conditions by Dr. Bhatt; the Defendants assigned James W. Allen MD, MPH, Occupational Medicine, ABMS Board Certified, Government physician to evaluate Plaintiff's application. The assigned Government physician reported on July 21, 2009 in relevant part as follows:

1. **"Reasonable Accommodation ICO Frank Angiulo …. The above employee requests a reasonable accommodation due to his psychiatric condition related to working with his manager… From July 14 to 15, 2009, I made a total of five telephone calls and left messages for Pravin Bhatt, MD. He never returned my messages and additional calls are futile."** Dr. Allen's report is attached as **Ex. 5** and incorporated by reference.

40. Defendants read Dr. Allen's report and took no further action to adequately investigate, evaluate or respond to Plaintiff's request for reasonable accommodation based upon psychiatric disabilities.

41. On information and belief, other similarly situated employees who were not the subject of retaliation were not subjected to this type of treatment.

### DEFENDANTS' CONTINUING VIOLATIONS OF REHABILATION ACT AND ACTS OF HARASSMENT, RETALIATION AND HOSTILE WORK ENVIRONMENT

42. In and about early January 2009, Plaintiff was again denied a transfer to another team within the Examinations Division but away from the stressful and hostile supervision of the team led by Ms. Sonja Ra'Vonn Hall. Defendants' denied this request for reduced stress and transfer without making any material effort to reduce stress in Plaintiff's work environment as requested by Plaintiff's treating psychiatrist Dr. Bhatt or in any material way in good faith investigate or evaluate his disclosed physical, mental or emotional disabilities as intended and mandated by Congress in the Rehabilitation Act.

43. On information and belief, during the time period surrounding this incident, other employees who were not disabled as Plaintiff was or who not the object of retaliation, did not receive comparable treatment and were allowed to transfer among the three teams supervised by Plaintiff's second line supervisor Janice Gore.

44. On January 21, 2009, Plaintiff's immediate supervisor, Ms. Sonja Ra'Vonn Hall, removed him from the " flexi-place" work schedule which allowed him to work at home and forced him, despite his known disabilities to risk the hazards of commuting form his home in the western suburbs to the Federal Building at 230 S. Dearborn, Chicago, Illinois, during a Chicago winter regardless of the dangers of falling and risks of injury presented by Chicago's particularly severe winter climate and inclement weather.

45. Ms. Sonja Ra'Vonn Hall made this decision with the knowledge Dr. Bhatt was treating Plaintiff for anxiety and stress disorders and major depression; and in which

46. On information and belief, during the time period surrounding this incident, other employees who were not disabled as Plaintiff was or who not the object of retaliation, did not receive comparable treatment and were allowed flexi-place authorization to work at home.

47. On January 21, 2009, Plaintiff was counseled regarding his use of sick leave on an ongoing basis. In crafting and executing this counseling, Plaintiff's managers failed to consider either Plaintiff's known disabilities or that they had failed to provide reasonable accommodation for those disabilities during the relevant period of time addressed in the counseling.

48. Beginning January 22, 2009 and continuing an ongoing basis, he was counseled and issued correspondence regarding his use of sick leave, including a memo on responsibilities for requesting leave.

49. On information and belief other such employees without disabilities were not comparably treated and counseled about sick leave abuse.

50. On or about February 3, 2009, management responded to Plaintiff's request for reasonable accommodation by sending him an email indicating their intent to discuss with him. Plaintiff, having never indicated that there were duties he could not perform, read this email with great anxiety and distress.

51. On February 11, 2009 Plaintiff, his union representative, and a reasonable accommodation coordinator met with Plaintiff's first line supervisor to discuss reasonable accommodations. At that time, Plaintiff was told that he could work flexi-

52. On February 20, 2009, Plaintiff requested to work flexi-place reporting that the weather reports anticipated a possible 6 to 8 inches of snow. Plaintiff's first line supervisor Sonja Ra'Vonn Hall refused his request noting in part, "Shea and Kathy have come into the office today." Shea and Kathy referred to two of Plaintiff's coworkers, who were not physically or mentally disabled.

53. At that time and place, on information and belief, neither Shea nor Kathy had requested reasonable accommodations, were placed under surveillance, or suffering from serious physical and mental impairment. Copies of emails reflecting these events are attached as Ex. 6 and incorporated by reference. Mr. Skilling's forecast is attached as Ex. 7 and incorporated by reference.

54. On information and belief, during the same approximate time period, similarly situated employees who were not disabled as Plaintiff was were not comparably treated and were not counseled about not traveling when inclement weather was anticipated; or told that other employees had made it into work.

55. On March 3, 2009, Plaintiff again requested a return to flexi-place status. On March 11, 2009, Ms. Ra'Vonn Hall, Plaintiff's first line supervisor refused to return Plaintiff to flexi-place even though Ms. Janice Gore, his second level supervisor, authorized his first line supervisor to return him to flexi-place once she believed his work performance had improved.

56. On information and belief, in truth and in fact on March 11, 2009; both

Ms. Ra'Vonn Hall, Plaintiff's first line supervisor and Ms. Janice Gore, his second level supervisor were aware that Plaintiff's work performance had either materially improved or was well within acceptable performance parameters which would have justified returning his authorization to work from home.

57. At this time and date, both Ms. Ra'Vonn Hall and Ms. Gore had been on notice over a year of Plaintiff's physical and mental disabilities from Dr. Bhatt's April 1, 2008 letter when making this denial.

58. On information and belief, other similarly situated employees who were not disabled or the object of retaliation as was Plaintiff, were allowed to flexi-place authorization.

### SUBMISSION OF FORMAL REASONABLE ACCOMODATION FORM ON MAY 14, 2009

59. Plaintiff submitted a formal reasonable accommodation request on May 14, 2009 attached as Ex. 4 and incorporated by reference. On this form he listed the following disabilities: heart Failure, hypertensions, major depression and stress related problems, insomnia, diabetes, sleep apnea, asthma, severe allergies, and swelling of the legs.

60. After Plaintiff submitted a formal written application for reasonable accommodation and indicated that he was being treated for psychiatric conditions by Dr. Bhatt; the Defendants assigned James W. Allen MD, MPH, Occupational Medicine, ABMS Board Certified, Government physician to evaluate Plaintiff's application. The assigned Government physician reported on July 21, 2009 in relevant part as follows:

2. **"Reasonable Accommodation ICO Frank Angiulo ….**

**The above employee requests a reasonable accommodation due to his psychiatric condition related**

61.    Defendants read Dr. Allen's report and took no further action to adequately

investigate, evaluate or respond to Plaintiff's request for reasonable accommodation

based upon psychiatric disabilities

**<u>DEFENDANTS' ADVANCED THEIR CAMPAIGN OF HARRASSMENT,<br>DISCRIMINATION AND RETALIATION THROUGH IMPROPER<br>PERFORMANCE RATINGS OF PLAINTIFF</u>**

62. To further their plan motivated by bias against Plaintiff's disabilities, to make

Plaintiff's work environment so hostile that no reasonable person could endure it and

force him into a constructive discharge and involuntary retirement, Defendants

improperly rated Plaintiff's performance. These improper ratings were given during

the relevant times covered by this complaint, including January 2009 through June

2009.

63. On information and belief, these ratings did not accurately reflect Plaintiff's overall

performance during rated periods, were not comparable to ratings given to similarly

situated and similarly performing employees without physical, mental and emotional

disabilities; and further did not fairly or accurately take into account Plaintiff's true

performance after reasonable and appropriate consideration of  periods when he was

required to take time off because of his disabilities.

64. Further during the relevant performance periods; Defendants through the individual, conspiratorial and cooperative actions of Plaintiff's first line supervisor Sonja Von Hall and second line supervisor Janice Gore actively engaged in intense and continual efforts to harass Plaintiff, create and maintain an increasingly hostile work environment; and in truth and in fact; rather than providing reasonable consideration and accommodation of Plaintiff's disabilities took a series of actions which severely exacerbated Plaintiff's physical, mental and emotional stress and suffering related to his disabilities – all of which on information and belief were at least in part intended to and did in fact materially impede Plaintiff's work performance.

65. As an example, on September 28, 2008; Defendant, through Plaintiff's first line supervisor Sonja Von Hall, being aware of Plaintiff's disabilities, informed Plaintiff that she intended to remove his flexi-place authority, not allow him to continue to work at home and require him to commute to downtown Chicago

66. At this time, neither Ms. Hall nor Ms. Gore had downtown Chicago as a primary work location. Ms. Hall's primary work location was in Kentucky. Ms. Gore's was in Wisconsin. Each managed the Chicago units remotely and with periodic on site visits.

67. Having been informed of the revocation of work at home authorization and in anticipation of commuting during the severe Chicago winters, Plaintiff suffered severe congestive heart failure the next day and was hospitalized from September 29, 2008 to October 9, 2008;

68. On January 7, 2009; Plaintiff's first line supervisor Sonja Von Hall and second line supervisor Janice Gore issued Plaintiff a "Minimally Successful" rating only on timeliness for the period ending November 30, 2008.

69. In every other category of this evaluation, particularly those addressing the quality and professionalism of his work; Frank met or exceeded his performance criteria.

70. On information and belief, the criteria used by Hall to evaluate Frank's timeliness amounted to a subjective formula with no objective foundation.

71. Defendant did not negatively rate the substantive quality of Plaintiff's work and instead held him to a unique, formulated standard only applied to Frank.

72. Plaintiff's manager did not properly consider his disabilities when making this rating, nor did they consider that Plaintiff was not provided reasonable accommodation for his disabilities during the rating period.

73. On information and belief, Ms. Hall and Ms. Gore improperly rated Plaintiff, based upon their bias against his physical , mental and emotional disabilities; and in furtherance of their plan, conspiracy and campaign to create such an intolerably hostile work environment that no reasonable person could endure it and to force Plaintiff into a constructive discharge and involuntary retirement.

74. On information and belief, the rating that Ms. Hall and Ms. Gore gave to Plaintiff did not accurately reflect his true overall performance, did not properly take into consideration the amount of time that he was unable to work on account of his disabilities; was not comparable to similar performance by similarly situated employees without disabilities.

75. On information and belief, similarly situated and similarly performing employees to Plaintiff, who were not disabled or the object of retaliation as Plaintiff was were not so adversely rated.

## JUNE 9 MIDYEAR REVIEW

76.     On June 9, 2009, Plaintiff's first line supervisor Ms. Sonja Ra'Vonn Hall issued

Plaintiff  a  mid-year review for the December 1, 2008 to May 31, 2009 period. In this

review, Ms. Hall lowered Plaintiff's rating in Customer Satisfaction to Fully

Successful from Exceeds Fully Successful and maintained a rating  Minimally

Successful in the category of Business Results – Efficiency.

77. Prior to this rating, Plaintiff filed an EEOC complaint on April 8, 20009.

78. On information and belief, on June 9, 2009, Ms. Gore improperly rated Plaintiff, as

retaliation for his filing an EEOC complaint and based upon her bias against his

physical, mental and emotional disabilities; and in furtherance of her plan, conspiracy

and campaign to create such an intolerably hostile work environment that no

reasonable person could endure it and to force Plaintiff into a constructive discharge

and involuntary retirement.

79. On information and belief, the rating that Ms. Hall gave to Plaintiff did not accurately

reflect his true overall performance, did not properly take into consideration the

amount of time that he was unable to work on account of his disabilities; was not

comparable to similar performance by similarly situated employees without

disabilities.

80. On information and belief, similarly situated and similarly performing employees to

Plaintiff, who were not disabled or the object of retaliation as Plaintiff was were not

so adversely rated.

17

**DEFENDANTS' ACTIONS SUBSEQUENT TO THE TIME PERIOD OF THIS COMPLAINT DEMONSTRATING PATTERN AND PRACTICE OF ILLEGAL CONDUCT AND RETALIATION**

81. Subsequent to the time period ending in or about July, 2009, addressed in the counts of this complaint; Defendants motivated by bias against Plaintiff's disabilities and their plan to create an intolerable working condition which no reasonable person could endure and force Plaintiff to be constructively discharged and involuntarily retire – continued to execute their plan, pattern and practice of refusing to properly acknowledge, investigate, evaluate, consider or accommodate Plaintiff's physical, mental and emotional disabilities as set forth herein. For the same reasons, Defendants continued to execute their plan, pattern practice of inflicting upon Plaintiff a pattern and practice of illegal discrimination, harassment, hostile work environment and retaliation for prior EEO activity, as set forth herein.

82. All of the above was executed through the individual actions and through conspiracy and cooperation of Plaintiff's first line supervisor Ms. Sonja Ra'Von Hall and Plaintiff's second line supervisor Ms. Janice Gore.

83. Specific examples of this continuing plan, pattern and practice of prohibited conduct are provided in paragraphs below.

84. On or about September 11, 2009, he, i.e. (Plaintiff), was subjected to a interrogation conducted by the Treasury Inspector General for Tax Administration (TIGTA).

85. Plaintiff was hospitalized again for stress related congestive heart failure – from approximately September 30 to October 6, 2009.

86. At approximately 5PM on Plaintiff's first day back to work following his second hospitalization for stress related congestive heart failure; Plaintiff's first line supervisor Sonja Ra'Vonn Hall sent him an email directing Plaintiff to report to the Agency Inspector for another interrogation concerning alleged false statements.

87. At this time and place, Ms. Ra'Vonn Hall was on notice that Plaintiff had suffered two hospitalizations for congestive heart failure and was under psychiatric care for anxiety and stress disorders and major depression; and further that he suffered from other disabilities set forth in his request for reasonable accommodation. See Ex. 4.

88. On or about October 15, 2009, Plaintiff's first line supervisor Sonja Ra'Vonn Hall initiated a conversation with Plaintiff about Plaintiff's recent visit to his daughter her boyfriend, both of whom were attending college at the University of Las Vegas, Nevada. In response to Ms. Ra'Vonn Hall's apparently good faith questions about his personal family visit; Plaintiff shared that he was happy to have a good relationship with his daughter's boyfriend and that he took the boyfriend to a professional shooting range in the city and fired weapons on that range, including a machine gun. He recalled how he was happy to be able to show his daughter's boyfriend something he had learned during his service in the US Navy.

89. Following this conversation and without further comment to Plaintiff, Ms. Sonja Ra'Vonn Hall contacted the Department of Homeland Security and requested that Plaintiff be investigated for mentioning a machine gun in the work place. On information and belief, the Department of Homeland Security did investigate Plaintiff, without finding an offense or recommending disciplinary action.

90. On or about October 22, 2009, Plaintiff was issued a Counseling Memorandum relative to his use of sick leave. On information and belief similarly situated employees who were not disabled as Plaintiff was and were not the object of retaliation as Plaintiff was, were not counseled under similar circumstances.

91. Plaintiff took medical leave at home for a third incidence of congestive heart failure after October, 2009.

92. On or about November 30, 2009; Defendants, as a purported or pre-textual reasonable accommodation of Plaintiff's disabilities offered to transfer him to the Determinations Section. At this time, Defendants knew that there was a general and  shared perception among many of the IRS revenue agents within Plaintiff's general working group that Determinations Section was a hostile and harassing environment, a highly stressful and undesirable assignment and one where revenue agents were assigned as a preliminary predicate to being forced into involuntary retirement. This perception was confirmed by several IRS employees either currently or formerly in Plaintiff's work unit during depositions in the administrative portion of this case.

93. On or about December 18, 2009 Plaintiff's first line supervisor Ms. Sonja Ra'Vonn Hall and second line supervisor Ms. Janice Gore issued Plaintiff an unjustifiably low performance  rating, which consequently led to the denial of a within grade increase.

94.  On information and belief, the ratings of December 18, 2009,  did not accurately reflect Plaintiff's overall performance during rated periods, were not comparable to ratings given to similarly situated and similarly performing employees without physical, mental and emotional disabilities; and further did not fairly or accurately take into account Plaintiff's true performance after reasonable and appropriate

95. Further during the relevant performance period supporting the December 18, 2009 rating; Defendants through the individual, conspiratorial and cooperative actions of Plaintiff's first line supervisor Sonja Von Hall and second line supervisor Janice Gore actively engaged in intense and continual efforts to harass Plaintiff, create and maintain an increasingly hostile work environment; and in truth and in fact; rather than providing reasonable consideration and accommodation of Plaintiff's disabilities took a series of actions which severely exacerbated Plaintiff's physical, mental and emotional stress and suffering related to his disabilities – all of which on information and belief were at least in part intended to and did in fact materially impede Plaintiff's work performance.

96. On information and belief other such employees without disabilities as Plaintiff or who not the object of retaliation as was Plaintiff were not comparably treated.

97. During the latter part of 2009, Defendants placed Plaintiff's movements under physical surveillance during at least one field visit, when they would not otherwise have done so but for their illegal discrimination against Plaintiff based upon his physical and mental disabilities. They further notified Plaintiff that he had been placed under physical surveillance by the Agency Inspector General during at least one field visit.

98. On information and belief, similarly situated and performing employees who were not disabled as Plaintiff was or who were not the object of retaliation; were not placed under surveillance as Plaintiff was.

99. During the latter part of 2009, on information and belief, Plaintiff's first line supervisor Ms. Sonja Ra'Von Hall requested that the Agency Inspector General investigate Plaintiff alleging that she suspected that Plaintiff falsely claimed one credit hour of overtime; and the Agency Inspector General did conduct that investigation.

100. On information and belief, similarly situated employees who were not disabled or the object of retaliation as Plaintiff was, were not subjected to similar requests for investigation or subjected to actual investigation for suspected false claims of one credit hour of overtime.

101. Plaintiff's disabilities severely limit a number of major life activities; such as walking, traveling and social interaction with family, friends and others. They also limit, without reasonable accommodation, his ability to continue the career he enjoys.

102. Effective January 1, 2010, Plaintiff was forced to retire in lieu of termination.

## PRIOR FALSE CHARGE OF ASSAULT AS SHOWING PATTERN AND PRACTICE OF ILLEGAL CONDUCT AND HOSTILITY TOWARDS PLAINTIFF

103. On or about September 28, 2008, when Plaintiff's first line supervisor Sonja Ra'Vonn Hall notified him in an office at the Federal Building located at 230 S. Dearborn, Chicago, Illinois that she was going to withdraw his flexi-place authorization to work at home; Plaintiff, shocked and frightened by the risks of commuting during a Chicago winter, panicked and raised his voice during the conversation.

104.     Days later, Ms. Sonja Ra'Vonn Hall contacted Human Resources and days later filed a charge of assault against the Plaintiff reporting to the Agency Inspector General, a Federal law enforcement activity, that as a result of Plaintiff's conduct at the meeting of September 28, 2009, several other government employees present on the worksite at the time came to her and report that they felt threatened.

105.     Subsequent investigation by the Agency Inspector General, as reflected in its final investigative report,  failed to identify or describe any employee who reported to Ms. Sonja Ra'Vonn Hall that they felt threatened as a result of Plaintiff's conduct at the meeting of September 28, 2008 in the IRS office at 230 S. Dearborn, Chicago, Illinois.

106.     At Ms. Sonja Ra'Vonn Hall's deposition in the administrative proceeding related to this incident; she could neither identify or describe any employee who allegedly reported to her that they felt threatened by Plaintiff's conduct at the September 28, 2008 meeting.

107.     At this same deposition, Ms. Sonja Ra'Vonn Hall stated that her report of employees telling her they felt threatened was incorrect and that she should have said that employees told her they were uncomfortable.

108.     On information and belief other similarly situated employees who have raised their voices on the work site as a result of shock and fear who were not disabled or the object of retaliation as was Plaintiff were not comparably treated and subjected to charges of assault being made to the Agency Inspector General and were not in fact investigated for assault by the Agency Inspector General as was Plaintiff.

## COUNT I – DISABILITY DISCRIMINATION
## VIOLATION OF REHABILITATION ACT
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION

1- 108 Plaintiff repeats and realleges ¶¶ 1-108 as ¶¶ 1-108 of Count I.

109.    On information and belief other such employees without disabilities were not

comparably treated.

110.    At all times herein Defendants had a duty to Plaintiff not to commit prohibited

disability discrimination and violate the provisions of the Rehabilitation Act and to

exercised ordinary care to adhere to and implement the obligations and

responsibilities of the Act.

111.    Notwithstanding the above duties; Defendants did individually and collectively

breach those duties to Plaintiff .  Specific examples of including but not limited to this

illegal egregious behavior includes when:

    a.  On or about January 7, 2009, Plaintiff received a "Minimally Successful"

        rating only on timeliness for the period ending November 30, 2008.

    b.  On or about January 21, 2009, On January 21, 2009, Plaintiff's immediate

        supervisor, Ms. Sonja Ra'Vonn Hall, removed him from the " flexi-place"

        work schedule which allowed him to work at home and forced him, despite

        his known disabilities to risk the hazards of commuting form his home in the

        western suburbs to the Federal Building at 230 S. Dearborn, Chicago, Illinois,

        during a Chicago winter regardless of the dangers of falling and risks of injury

        presented by Chicago's particularly severe winter climate and inclement

        weather.  At this time, Defendants had prior notice that Frank had previously

c.   Beginning approximately January 22, 2009 and continuing an ongoing basis, he was counseled and issued correspondence regarding his use of sick leave, including  a memo on responsibilities for requesting leave.

d.   On or about February 3, 2009, management responded to his request for reasonable accommodation (RA) with an email mentioning duties he was unable to perform.

e.   On or about, February 20, 2009, Plaintiff requested to work flexi-place reporting that the weather reports anticipated a possible 6 to 8 inches of snow. Plaintiff's first line supervisor Sonja Ra'Vonn Hall refused his request noting in part, "Shea and Kathy have come into the office today." Shea and Kathy referred to two of Plaintiff's coworkers, who were not physically or mentally disabled. At that time and place, on information and belief, neither Shea nor Kathy had requested reasonable accommodations, were placed under surveillance, or suffering from serious physical and mental impairment.

f.   On or about, March 11, 2009, Ms. Ra'Vonn Hall, Plaintiff's first line supervisor refused to return Plaintiff to flexi-place even though Ms. Janice Gore, his second level supervisor, authorized his first line supervisor to return him to flexi-place once she believed his work performance had improved.

g.     On or about, June 9, 2009, Complainant received a lowered mid year review for the December 1, 2008 to May 31, 2009 period.

h.  In early January 2009, Plaintiff was denied a transfer as a RA to another position within the Examinations Division.

112.  The above wrongful actions by Defendants, constituted numerous and repeated violations of the Rehabilitation Act and caused Plaintiff to suffer and to continue to suffer great physical, mental, emotional anguish; loss of income and earning ability.

113.  On information and belief, similarly situated employees who were not disabled or the object of retaliation as Plaintiff was, were not subjected to comparable treatment as that afforded to Plaintiff and as described herein.

114.  Plaintiff demands trial by jury.

WHEREFORE Plaintiff Frank Angiulo, by his attorney Nicola S. Tancredi, respectfully prays this Honorable Court enter judgment against Defendant United States of America; Defendant Timothy Geithner, Secretary of Treasury; Defendant Department of Treasury and Defendant Internal Revenue Service  (hereinafter Defendants) and enter an order for the following:

a)  declare that  Defendant United States of America; Defendant Timothy Geithner, Secretary of Treasury; Defendant Department of Treasury and Defendant Internal Revenue Service  (hereinafter Defendants)  violated the Rehabilitation Act;

b)  award Plaintiff compensatory and pecuniary damages in an amount to compensate him for all  damages caused by Defendants.

(c) reinstate Plaintiff to his former position

(d) award Plaintiff prejudgment interest on damages recovered, at the prime rate, compounded annually, or the rate allowed by law; and

26

(e) award costs, reasonable attorney's fees, and

(f)  such other relief as it deems just.

## COUNT II – DISABILITY DISCRIMINATION
## HOSTILE WORK ENVIRONMENT

1- 108. Plaintiff repeats and realleges ¶¶ 1-108 as ¶¶ 1-108 of Count II.

109.    On information and belief other such employees without disabilities were not comparably treated.

110 . At all times herein Defendants each had a duty to Plaintiff not so subject Plaintiff to a hostile work environment.

111.    On information and belief, similarly situated employees who were not disabled or the object of retaliation as Plaintiff was, were not subjected to comparable treatment as that afforded to Plaintiff and as described herein.

112. Notwithstanding the above duties; Defendants did individually and collectively breach those duties to Plaintiff and subjected Frank to a hostile work environment . Specific examples of including but not limited to this illegal egregious behavior includes when:

    a.  On or about January 7, 2009, Plaintiff received a "Minimally Successful" rating only on timeliness for the period ending November 30, 2008.

    b.  On or about January 21, 2009, On January 21, 2009, Plaintiff's immediate supervisor, Ms. Sonja Ra'Vonn Hall, removed him from the " flexi-place" work schedule which allowed him to work at home and forced him, despite his known disabilities to risk the hazards of commuting form his home in the western suburbs to the Federal Building at 230 S. Dearborn, Chicago, Illinois,

 c. Beginning approximately January 22, 2009 and continuing an ongoing basis, he was counseled and issued correspondence regarding his use of sick leave, including  a memo on responsibilities for requesting leave.

 d. On or about February 3, 2009, management responded to his request for reasonable accommodation (RA) with an email mentioning duties he was unable to perform.

 e. On or about, February 20, 2009, Plaintiff requested to work flexi-place reporting that the weather reports anticipated a possible 6 to 8 inches of snow. Plaintiff's first line supervisor Sonja Ra'Vonn Hall refused his request noting in part, "Shea and Kathy have come into the office today." Shea and Kathy referred to two of Plaintiff's coworkers, who were not physically or mentally disabled. At that time and place, on information and belief, neither Shea nor Kathy had requested reasonable accommodations, were placed under surveillance, or suffering from serious physical and mental impairment.

 f. On or about, March 11, 2009, Ms. Ra'Vonn Hall, Plaintiff's first line supervisor refused to return Plaintiff to flexi-place even though Ms. Janice Gore, his second level supervisor, authorized his first line supervisor to return him to flexi-place once she believed his work performance had improved.

g.      On or about, June 9, 2009, Complainant received a lowered mid year review for the December 1, 2008 to May 31, 2009 period.

h.  In early January 2009, Plaintiff was denied a transfer  to another position within the Examinations Division.

113.  The above wrongful actions by Defendants subjected Plaintiff to a hostile work environment and caused Plaintiff to suffer and to continue to suffer great physical, mental, emotional anguish; loss of income and earning ability.

114. Plaintiff demands trial by jury.

WHEREFORE Plaintiff Frank Angiulo, by his attorney Nicola S. Tancredi, respectfully prays this Honorable Court enter judgment against Defendant United States of America; Defendant Timothy Geithner, Secretary of Treasury; Defendant Department of Treasury and Defendant Internal Revenue Service and enter  an order for the following:

a)  declare that  Defendant United States of America; Defendant Timothy Geithner, Secretary of Treasury; Defendant Department of Treasury and Defendant Internal Revenue Service violated the Rehabilitation Act;

b)  award Plaintiff compensatory and pecuniary damages in an amount to compensate him for all  damages caused by Defendants.

(c) reinstate Plaintiff to his former position

(d) award Plaintiff prejudgment interest on damages recovered, at the prime rate, compounded annually, or the rate allowed by law; and

(e) award costs, reasonable attorney's fees, and

(f)  such other relief as it deems just.

## COUNT III– RETALIATION

1- 108. Plaintiff repeats and realleges ¶¶ 1-108 as ¶¶ 1-108 of Count III.

109.    On information and belief other such employees without disabilities were not comparably treated.

110. At the times Defendants committed the acts above, they were aware that

Plaintiff had filed an EEOC Complaint dated January 21, 2009 and had otherwise availed himself to the EEOC process.

111.    Specific examples of including but not limited to this illegal egregious behavior in violation of the Rehabilitation Act includes when: Defendants retaliated against Plaintiff for signing the notices of his EEO complaint of disability discrimination , dated 1/21/2009 and thereafter,  by the actions described in paragraphs 1-108 above and by reprimanding him without cause, less than two months after he signed the  notice of the complaint.

112.    Because of Defendants acts of retaliation as described herein, Plaintiff has suffered and continues to suffer great physical, mental, emotional anguish; loss of income and earning ability.

113.    Plaintiff demands trial by jury.

WHEREFORE Plaintiff Frank Angiulo, by his attorney Nicola S. Tancredi, respectfully prays this Honorable Court enter judgment against Defendant United States of America; Defendant Timothy Geithner, Secretary of Treasury; Defendant Department of Treasury and Defendant Internal Revenue Service  (hereinafter Defendants) and enter an order for the following:

a)  declare that  Defendant United States of America; Defendant Timothy

Geithner, Secretary of Treasury; Defendant Department of Treasury and

Defendant Internal Revenue Service  (hereinafter Defendants)  violated the

Rehabilitation Act;

b)  award Plaintiff compensatory and pecuniary damages in an amount to

compensate him for all  damages caused by Defendants.

(c) reinstate Plaintiff to his former position

(d) award Plaintiff prejudgment interest on damages recovered, at the prime

rate, compounded annually, or the rate allowed by law; and

(e) award costs, reasonable attorney's fees, and

(f)  such other relief as it deems just.

## COUNT IV INTENTIONAL INTERFRENCE WITH PLAINTIFF'S RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT

1- 108. Plaintiff repeats and realleges ¶¶ 1-108 as ¶¶ 1-108 of Count III.

109.    On information and belief other such employees without disabilities were not comparably treated.

110.    Plaintiff was eligible for the Family and Medical Leave Act, 29 U.S.C. 2601 (hereinafter "FMLA"), in the time frame of January 2009 to June 2009, he had been employed by the Defendant for at least twelve (12) months and worked at least 1,250 hours in the prior twelve (12) months.

111.    At all relevant times hereto, Defendant was a covered employer under FMLA in that the Defendant employed at least fifty (50) employees within seventy-five (75) miles of Plaintiff's workplace.

112.    At all times relevant hereto, Plaintiff was qualified for his position as Revenue Agent within the Pension Examination Group and his performance met or exceeded his employer's legitimate expectations.

113.    Plaintiff had number of physical disabilities including cardiac conditions and ailments – manifesting in repeated congestive heart failures requiring hospitalization, diabetes, asthma,  hypertension, high blood pressure, morbid obesity, insomnia, severe allergies, swelling of the legs and sleep apnea. He has also suffered from mental disabilities of anxiety, stress related disorders and major depression since no later than 2007.

114.    No later than April 10, 2008, Defendants received formal, direct notice and information relating to the nature and extent of Plaintiff's serious physical and mental impairments.

115.    Plaintiff's supervisors knew that depriving Frank of his right to leave while suffering from a serious health condition that made him unable to perform the essential functions of his job violated the FMLA.

116.    Defendants had the ability to control in whole or in part whether Frank would be allowed to take leave due to his serious health condition that made him unable to perform the essential functions of his job.

117.    Despite the awareness of Defendants of Frank's need to take time off due to his serious health condition that made him unable to perform the essential functions of his job, Defendants refused to allow him to take any time off during these periods.

118.    In fact, Defendants willfully created a series conditions which made it substantially more difficult on Plaintiff to conduct his job despite and because of their knowledge he suffered serious health condition that made him unable to perform the essential functions of his job.

119.    Specific examples of including but not limited to this illegal egregious behavior in violation of the FMLA include:

a.    On or about January 7, 2009, Plaintiff received a "Minimally Successful" rating only on timeliness for the period ending November 30, 2008.

b.    On or about January 21, 2009, On January 21, 2009, Plaintiff's immediate supervisor, Ms. Sonja Ra'Vonn Hall, removed him from the " flexi-place" work schedule which allowed him to work at home and forced him, despite his known disabilities to risk the hazards of commuting form his home in the western suburbs to the Federal Building at 230 S. Dearborn, Chicago, Illinois, during a Chicago winter regardless of the dangers of falling and risks of injury  presented by Chicago's particularly severe winter climate and inclement weather. At this time, Defendants had prior notice that Frank had previously fallen and could not get up at the Des Plaines CTA stop earlier that year (2009).

c.    Beginning approximately January 22, 2009 and continuing an ongoing basis, he was counseled and issued correspondence regarding his use of sick leave, including  a memo on responsibilities for requesting leave.

    d.   On or about February 3, 2009, management responded to his request for reasonable accommodation (RA) with an email mentioning duties he was unable to perform.

    e.   On or about, February 20, 2009, Plaintiff requested to work flexi-place reporting that the weather reports anticipated a possible 6 to 8 inches of snow. Plaintiff's first line supervisor Sonja Ra'Vonn Hall refused his request noting in part, "Shea and Kathy have come into the office today." Shea and Kathy referred to two of Plaintiff's coworkers, who were not physically or mentally disabled. At that time and place, on information and belief, neither Shea nor Kathy had requested reasonable accommodations, were placed under surveillance, or suffering from serious physical and mental impairment.

    f.   On or about, March 11, 2009, Ms. Ra'Vonn Hall, Plaintiff's first line supervisor refused to return Plaintiff to flexi-place even though Ms. Janice Gore, his second level supervisor, authorized his first line supervisor to return him to flexi-place once she believed his work performance had improved.

    g.   On or about, June 9, 2009, Complainant received a lowered mid year review for the December 1, 2008 to May 31, 2009 period.

    h.   In early January 2009, Plaintiff was denied a transfer as a RA to another position within the Examinations Division.

120.    Defendants willfully used false pretexts that led to what amounted to a constructive discharge of Plaintiff.

121.     Defendants acted willfully in denying his rights under the FMLA.

122.     Plaintiff demands trial by jury.

WHEREFORE, Plaintiff Frank Angiulo, by his attorney Nicola S. Tancredi, respectfully

prays this Honorable Court enter judgment against the Defendants and enter an order for

the following:

     c)   declare that  Defendant United States of America; Defendant Timothy

            Geithner, Secretary of Treasury; Defendant Department of Treasury and

            Defendant Internal Revenue Service  (hereinafter Defendants)  violated the

            Family and Medical Leave Act.

     d)  award Plaintiff compensatory and pecuniary damages in an amount to

            compensate him for all  damages caused by Defendants.

     (c) reinstate Plaintiff to his former position

     (d) award Plaintiff prejudgment interest on damages recovered, at the prime

            rate, compounded annually, or the rate allowed by law; and

     (e) award costs, reasonable attorney's fees, and

     (f)  such other relief as it deems just.

                                  By s/Nicola S. Tancredi

                                  Nicola S. Tancredi
                                  Attorney for Plaintiff
                                  Frank Angiulo

Law Offices of Nicola S. Tancredi
Attorney for Plaintiff Frank Angiulo
Two North Trans Am Plaza Dr, Suite 250
Oakbrook Terrace, IL 60181
Phone  (630) 530-0567  Fax   (630) 530-7576
ntancredilaw@gmail.com
ARDC NO. 2795736